INDUCTION INNOVATIONS, INC., and
SARGE HOLDINGS COMPANY, LLC,

      Plaintiffs,

      v.

DAVID PACHOLOK,

      Defendant.

No. 13 CV 5102

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

David Pacholok and Thomas Gough are the named inventors on two U.S. patents relating to heating devices for use in automotive repair. Pacholok and Gough also co-founded Induction Innovations, an Illinois corporation that manufactures and sells products practicing some of the patented inventions. Several years after creating Induction, Pacholok and Gough decided to part ways. Pacholok resigned from his position as corporate officer and sold his stock in Induction, receiving in exchange a promise by Induction to pay him royalties on the sale of goods embodying the patented inventions. Following his departure from Induction, Pacholok made contact with one of the company's competitors, Lace Technologies, and began to license the patents to Lace. In 2013, Induction—along with Sarge Holdings, the assignee of Gough's ownership share in the two patents—filed in federal court a breach-of-fiduciary-duty claim against Pacholok. Plaintiffs' second amended complaint also included four additional claims: patent

infringement; interference with business relations; and two requests for declaratory judgment (one a declaration of inventorship for the two patents-in-suit, the other a declaration that no money is owed Pacholok under his Stock Purchase Agreement). Pacholok now movies to dismiss plaintiffs' claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons discussed below, I grant in part and deny in part Pacholok's motion.

## I. Legal Standard

In evaluating a motion to dismiss brought under Rule 12(b)(1), I accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 539 (7th Cir. 2012) (citing *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012)). Where the jurisdictional challenge is based on facts extrinsic to the complaint, however, I may look beyond the complaint's allegations and view whatever evidence has been submitted on the issue. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

## II. Facts

In 2000, David Pacholok and Thomas Gough co-founded Induction Innovations, Inc., a company that manufactured and sold (and continues to manufacture and sell) induction heaters for use in the automotive aftermarket. [139][1] ¶¶ 4, 6. Upon incorporation, Pacholok and Gough each owned 50 percent of Induction's issued stock. *See id.* ¶¶ 2–3. Pacholok and Gough are also the named co-

---

[1] Citations to the record are designated by the document number as reflected on the district court's docket, enclosed in brackets.

inventors of U.S. Patent Nos. 6,563,096 and 6,670,590, *id.* ¶ 5, which issued in 2003, *see* [139-1] at 3, 11. The patents recite method- and apparatus-type claims relating to heating devices to be used in automotive repair. *See id.*; *see also* [139] ¶ 26.

In 2006, Gough and Pacholok decided to part ways, and Pacholok resigned from his position as an officer and director of Induction. *See* [139] ¶¶ 2, 19. Pursuant to a "Stock Purchase Agreement," Pacholok also agreed to relinquish his shares in the company, *see id.*, in exchange for which Induction agreed, *inter alia*, to pay Pacholok an annual royalty on sales by Induction of any products practicing the '096 or '590 patent (if, within the calendar year, such sales exceeded one million dollars). *See id.* ¶ 56. Gough formally assigned his ownership rights in both patents to Sarge Holdings, LLC, which then licensed to Induction the right to practice and enforce the patents; Pacholok, however, refused to do the same. *See id.* ¶¶ 11, 22, 43.[2]

Five years after Pacholok's departure from Induction, Pacholok entered a series of agreements with Lace Technologies, Inc., a company that formerly had manufactured heating units for Induction, *see id.* ¶ 9. Through these agreements, Pacholok granted (or purported to grant) to Lace a license to manufacture and sell products practicing the '096 and '590 patents. *See id.* ¶¶ 13–14. Pursuant to the (purported) license, Lace began to produce and sell items embodying the patented

---

[2] At one time, Pacholok (and Gough) did execute a written assignment of the patents to Induction Holding Company, *see* [151-11] at 2 (dated December 2006), in order to facilitate litigation against a third party not involved in the current suit, *see* [151] at 10. Once that suit had concluded, however, all rights to the patents were assigned back to each of the inventors. *See* [151-11] at 3 (dated August 2008); [151] at 10.

technology—items that competed directly with Induction's own heating products. *See id.* ¶¶ 15–16.

In July 2013, Induction and Sarge filed suit against Pacholok in federal court, alleging that Pacholok's failure to formally assign to Induction his legal title to the patents—coupled with his attempt to license his interest in those patents to Induction's competitor—constituted a breach of Pacholok's fiduciary duty to the corporation. *See* [1] ¶¶ 22–39. In his answer to the original complaint, [20], Pacholok included two counterclaims: the first alleging that Pacholok, not Gough, was the true (and only) inventor of the '096 and '590 patent (and requesting a corresponding correction of the named inventors pursuant to 35 U.S.C. § 256), *see id.* ¶¶ 30–37; the second alleging a breach of contract by Induction based on Induction's purported failure to pay Pacholok royalties owed under the 2006 Stock Purchase Agreement, *see id.* ¶¶ 45. Plaintiffs subsequently amended their complaint (twice), ultimately including with their fiduciary-breach claim (now Count II), *see* [139] ¶¶ 31–49, four additional counts: declaratory judgment of patent inventorship (Count I), *id.* ¶¶ 25–30; patent infringement (Count III[3]), *id.* ¶¶ 50–52; interference with business relations (Count IV), *id.* ¶¶ 53–54; and a declaratory judgment that Induction owes nothing to Pacholok under the 2006 Stock Purchase Agreement (Count V), *id.* ¶¶ 55–58.

---

[3] Plaintiffs include in their second amended complaint, [139], two separate claims labeled "Count 2." *See id.* at 5 (fiduciary breach); *id.* at 7 (patent infringement). I assume that plaintiffs intended to label their counts sequentially, and thus refer to the counts as they should have been numbered.

4

Pacholok filed a motion to dismiss plaintiffs' second amended complaint for lack of subject-matter jurisdiction. [144]. Attached to this motion was a covenant by Pacholok not to re-plead or file against plaintiffs any counterclaim or action seeking correction of inventorship. *See id.* at 62–63. But the covenant included an exception: should a third party challenge the validity of either the '096 or '590 patent, and base that challenge on the inventorship of the patent(s), Pacholok reserved the right to pursue his correction-of-inventorship claim. *See id.* at 62 ¶ 4.

## III.  Analysis

In his motion to dismiss for lack of federal jurisdiction, Pacholok asserts that only two of plaintiffs' five claims—inventorship (Count I) and patent infringement (Count III)—arise under the patent laws and therefore fall, at least ostensibly, within the Court's original jurisdiction. *See id.* at 2. But, says Pacholok, the Court nonetheless does not have jurisdiction over these claims, because plaintiffs do not have standing to bring them. *See id.* at 2–3, 5–7. Pacholok further contends that the remaining three claims—fiduciary breach (Count II), interference with business relations (Count IV), and construction of the Stock Purchase Agreement (Count V)—are state-law claims, and urges that these claims, too, must be dismissed since: (1) without jurisdiction over the patent-based claims, the Court cannot exercise supplemental jurisdiction over any state-law claims; and (2) regardless, supplemental jurisdiction is inappropriate because the state-law claims do not stem from the same "nucleus of facts" as the federal claims. *See id.* at 3–4, 14–15.

### A. The Infringement and Inventorship Claims

#### 1. Patent Infringement (Count III)

Plaintiffs assert that Pacholok both has infringed the patents-in-suit and has induced infringement of those patents by plaintiffs' competitor, Lace Technologies. *See* [139] ¶ 52. Plaintiffs seek as remedy both monetary and injunctive relief. *See id.* at 8–9.

##### a. Infringement Damages

Article III of the Constitution limits federal judicial power by requiring that courts resolve only true "cases" or "controversies." U.S. Const. art. III, § 2. The requirement of "standing"—that the plaintiff has "a right to judicial relief"—ensures that a suit involves a case or controversy. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338–39 (Fed. Cir. 2007) (quoting *Warth v. Seldin*, 244 U.S. 490, 500 (1975)).[4] Under federal patent law, only a "patentee" has a right to legal relief for infringement. *See id.* at 1339 (citing 35 U.S.C. § 281).

Congress has defined "patentee" to include not just the individual to whom the patent originally issued, but also that individual's "successors in title." *Id.* (citing 35 U.S.C. § 100(d)). Successors in title are those who possess legal title to the patent. *See id.* (citing *Enzo Apa & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *Prima Tek II LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000)). Here, plaintiffs allege that Pacholok's co-inventor, Thomas Gough (who is not a party to this action), formally assigned his ownership rights to Sarge

---

[4] As patent infringement is a matter "unique to patent law," I apply Federal Circuit law. *See Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012).

Holdings, which then licensed those rights to Induction. Thus, according to plaintiffs, they collectively possess legal title to the patents-in-suit to the extent that Thomas Gough held title prior to this assignment. *See* [139] ¶ 43; *see also id.* ¶ 8 (alleging that plaintiffs own legal title "as to Thomas Gough").[5]

Plaintiffs are correct that, as an inventor of the patents-in-suit, Gough "presumptively own[ed] a pro rata undivided interest" in the patents. *Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1324 (Fed. Cir. 2013) (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998)). Consequently, when Gough assigned that interest to Sarge Holdings, Sarge acquired the same (*pro rata*) rights—including Gough's right to exclude others from practicing the patented inventions, *see Morrow*, 499 F.3d at 1339 ("A patent grant bestows the legal right to exclude others from making, using, selling, or offering to sell the patented invention . . . ." (citing 35 U.S.C. §§ 154, 271)). But a *pro rata* ownership interest—even if undivided—is not enough to confer

---

[5] In their complaint, plaintiffs state in multiple instances that Induction owns Gough's title to the patents-in-suit. *See, e.g.*, [139] ¶¶ 8, 43, 45. However, as paragraph 43 of the complaint makes clear, it is Sarge Holdings—not Induction—that formally holds Thomas Gough's ownership rights. *See id.* ¶ 43 (explaining that Gough "assigned [his ownership] rights to Sarge"). Induction is the exclusive licensee of Sarge, *see id*, and licensees do not always have the ability to enforce patent rights without the true owner's say-so, *see Morrow*, 499 F.3d at 1340 (observing that "exclusionary rights 'must be enforced through or in the name of the owner of the patent'" (quoting *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 467 (1926))). With certain exceptions, licensees must therefore join as co-plaintiff the actual title-holder in any infringement suit. *See id.* Because Sarge Holdings (the purported title-holder) has voluntarily joined Induction (the licensee) as co-plaintiff in this suit, however, the joinder requirement is satisfied—at least with respect to the ownership interest that Sarge Holdings has obtained from Gough. I therefore refer to plaintiffs' ownership interests collectively even though, as a technical matter, the complaint suggests that only Sarge possesses legal title.

upon plaintiffs standing to sue Pacholok for infringement because, according to plaintiffs' complaint, Pacholok still holds that same interest.

Plaintiffs admit that Pacholok did not formally assign to Induction or Sarge any of his ownership rights in the patents-in-suit. *See, e.g.*, [139] ¶ 11 (stating that "Pacholok has refused to formally assign any ownership rights" to the patents); *id.* ¶ 44 (similar); *see also id.* ¶ 8 (stating that plaintiffs own legal title "as to Thomas Gough *but not as to David Pacholok*") (emphasis added).[6] And there is no allegation that Pacholok has assigned those rights to any other entity. Plaintiffs therefore concede that the *pro rata* interest Pacholok presumptively acquired as co-inventor of the patents remains with him, and that, consequently, he retains the same "exclusionary" rights as plaintiffs. Pacholok, too, has the legal authority to make, use, or sell the patented inventions to the exclusion of others who do not possess such rights. Plaintiffs therefore lack standing to sue Pacholok for infringement because, as the Federal Circuit has made clear, plaintiffs who hold the exclusionary rights to a patent suffer a legally cognizable injury—and thus have standing to sue—only "when an *unauthorized* party encroaches upon those rights." *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264–65 (Fed. Cir. 2010) (citing *Morrow*, 499 F.3d at 1340) (emphasis added); *see also Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1571–72 (Fed. Cir. 1997) (observing that a plaintiff seeking relief for patent infringement must allege "facts . . . demonstrat[ing] that he, and *not the defendant*, owns the patent rights on which

---

[6] Pacholok contends that other documents extrinsic to the complaint contain similar admissions. *See, e.g.*, [144] at 5–6, 9, 13–14. Because the complaint itself concedes the point, however, I need not look beyond those allegations. *See Apex*, 572 F.3d at 444.

the infringement suit is premised") (emphasis added). Plaintiffs have failed to plead a violation of their exclusionary rights, and therefore do not have standing to sue Pacholok for infringement, because plaintiffs were not entitled to "exclude" Pacholok in the first place.[7]

Plaintiffs contend that standing is not a problem for them here because, in point of fact, they have held complete title to the patents all along. *See* [151] at 16–17. According to plaintiffs, both Gough and Pacholok entered an implied contract with Induction, through which the inventors agreed to assign to the corporation the inventors' ownership rights in exchange for, *inter alia*, salaries received while working at the company beginning in 2000. *See id.*; *see also* [139] ¶ 44. Thus, argue plaintiffs, they have held complete legal title to the patents-in-suit since that time— and so necessarily have standing to sue Pacholok for infringement now. *See* [151] at 17. In addition, plaintiffs contend that I have the authority to confirm that plaintiffs had legal title before filing suit, *see id.* at 18–19, thus removing any jurisdictional

---

[7] Pacholok asserts that plaintiffs are also barred from bringing an infringement suit against him because "[a]ny titleholder . . . may block a patent infringement claim." [144] at 8 (citing, *inter alia*, *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998)). Pacholok is indeed a title-holder, and generally, all co-owners of a given patent must voluntarily consent to suit against an alleged infringer: a single co-owner alone cannot seek relief, *see Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1264–65 (Fed. Cir. 2007) ("Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing." (citing *Prima Tek II*, 222 F.3d at 1377)). However, the voluntary-joinder rule is an element of prudential—not constitutional—standing requirements. *See id.* at 1265 (citing *Prima Tek II*, 222 F.3d at 1377). Moreover, the case law provides for exceptions to such requirements where the alleged infringer is also the patentee and "cannot sue himself." *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) (citing *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995)). In any event, I need not determine whether any such exception applies here—and therefore whether the prudential standing requirements have been satisfied as to Pacholok—because, as explained above, plaintiffs do not have *constitutional* standing to sue him for infringement.

9

bar to reaching the merits of their infringement claim. But plaintiffs' theory falters on several fronts.

First, although plaintiffs now maintain that they have held complete legal title to the patents since 2000, their complaint admits exactly the opposite. *See* [139] ¶ 8 (alleging that Induction "owns legal title as to Thomas Gough *but not as to David Pacholok*") (emphasis added); *id.* ¶ 11 ("Pacholok has refused to formally assign any ownership rights . . . to Induction."); *id.* ¶ 44 (similar); *id.* ¶ 48 ("Induction has been damaged by Pacholok's failure to formally assign his legal title in the [patents-in-suit] to Induction . . . ."); *id.* ¶49 (similar). Having chosen the field for their battle, plaintiffs cannot now protest that the turf is too feeble to hold their claim. *See D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) ("Allegations [in a complaint] are binding admissions . . . ." (quoting *Jackson v. Marion Cnty.*, 66 F.3d 151, 153–54 (7th Cir. 1995))); *see also Jackson*, 66 F.3d at 154 ("[A]dmissions in a complaint can  . . . admit the admitter to the exit from the federal courthouse."). Even putting aside these allegations, however, the infringement claim still cannot proceed because, contrary to what plaintiffs suggest, I cannot determine today that plaintiffs had legal title to the patents before filing suit in order to then reach the infringement claim on its merits.

Relying on *Air Products & Chems. v. Reichhold Chems., Inc.*, 755 F.2d 1559 (Fed. Cir. 1985) and its progeny, plaintiffs maintain that the lack of a formal, pre-suit assignment of complete (non-*pro rata*) title is no bar to their claim of infringement because, under Federal Circuit precedent, I may simply confirm that

title transferred to them by operation of law fourteen years ago. *See* [151] at 18–19. But plaintiffs' reliance on *Air Products* is misplaced.

In *Air Products*, the patent-owner (Air Products) had granted a nonexclusive license to DuPont (which later assigned its rights to the defendant) to practice the patent-in-suit. *See* 755 F.2d at 1560. Air Products claimed that the defendant-licensee had breached the terms of the license agreement, causing Air Products to then terminate the agreement and file an infringement suit. *See id.* The district court dismissed the suit for lack of jurisdiction, concluding that the "primary issue for resolution" was not the alleged infringement but breach of contract. *See id.* at 1561. The Federal Circuit reversed, observing that the district court's need to first resolve the license dispute did not strip the court of original jurisdiction over the patent-infringement issue. *See id.* at 1563.

But *Air Products* and its brethren are inapposite here. Those cases, as the Federal Circuit later clarified, involved license agreements—not a dispute about whether there was a valid assignment of legal title. *See Jim Arnold*, 109 F.3d at 1577. The plaintiff-licensor's title to the patent-in-suit (and thus the plaintiff's standing to sue for infringement damages) was not at issue in *Air Products* because legal "title to the patent does not change hands under a license agreement," *id.* Here, by contrast, plaintiffs' standing to bring their claim for infringement damages—and, consequently, my jurisdiction over that claim—hinges on who, precisely, owned legal title to the patents-in-suit during the period of alleged

infringement: plaintiffs alone, or plaintiffs *and* Pacholok (each with a 50-percent *pro rata* share)? And on that question, plaintiffs face an un-scalable jurisdictional wall.

Plaintiffs cannot successfully argue complete, pre-suit title to the patents-in-suit because their argument is premised on a *de facto* assignment of ownership rights. Federal patent law does not recognize such assignments. To the contrary, Congress has expressly limited the validity (and thus enforceability) of patent-right assignments to *written* transfers. *See* 35 U.S.C. § 261 ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing."); *see also Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365 (Fed. Cir. 2010) ("Abraxis I") (observing that a "written agreement is necessary to consummate [an] assignment" of patent rights) (citing *IpVenture v. ProStar Computer, Inc.*, 503 F.3d 1324, 1327 (Fed. Cir. 2007))); *cf. Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) ("The party asserting that it has all substantial rights in the patent 'must produce . . . written instrument[s] documenting the transfer of proprietary rights.'" (quoting *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000)). Because plaintiffs did not obtain a *written* assignment of Pacholok's ownership rights before filing suit (as plaintiffs concede), plaintiffs did not at that time have Pacholok's legal title as defined by federal law, and so do not now have standing to pursue an infringement claim against him.[8]

---

[8] Plaintiffs counter that Illinois common law recognizes implied or *de facto* contracts, and that, consequently, an implied contract in this instance may constitute a legitimate assignment (thus saving from dismissal plaintiffs' infringement claim). *See* [151] at 16–17. That Illinois may recognize implied contracts in other contexts is irrelevant to whether

Plaintiffs' "vesting" theory suffers from a similar defect. As an alternative to their implied-contract theory, plaintiffs also allege in their complaint that Pacholok, as a former co-owner of Induction, owed to the corporation a fiduciary duty—which included an obligation to formally assign to that entity Pacholok's ownership rights in the patents. *See* [139] ¶ 47. Thus, argue plaintiffs, when Pacholok failed to so assign his rights, the resulting fiduciary breach automatically "vested" in plaintiffs full and complete title to the patents-in-suit. *See id.* ¶ 51. This cannot be. As explained above, Congress has demanded that patent assignments be in written form. *See Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996) ("[T]he relevant statutes require an assignment of [the] patents . . . to be in writing."). And, importantly, the written assignment must be acquired *before* suit is filed. *See id.* at 780; *see also Abraxis Bioscience, Inc. v. Navinta LLC*, 672 F.3d 1239, 1240 (Fed. Cir. 2011) (denying rehearing *en banc* of *Abraxis I*).

In short, the ownership interest that plaintiffs claim to possess—under either theory—is not a complete legal title at all, but a partial legal title (to Gough's former 50-percent share) coupled with an equitable interest (in Pacholok's *pro rata* half).[9] Consequently, plaintiffs' demand for "confirmation" of their complete

---

plaintiffs acquired complete legal title to the patents in this case. Where, as here, "Congress has adopted a statutory scheme to apply in a particular field, federal law preempts state law." *Abraxis Bioscience, Inc. v. Navinta LLC*, 672 F.3d 1239, 1241 (Fed. Cir. 2011) (citing *Campbell v. Hussey*, 368 U.S. 297 (1961); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In the patent arena, Congress has decided that only written assignments will suffice.

[9] *Compare* [139] ¶ 8 (alleging that Induction "owns legal title as to Thomas Gough but not as to David Pacholok) *with id.* ¶ 18 (alleging that the patents-in-suit are "equitably owned" by Induction).

ownership is, in reality, a request that I *convert*, through judicial order, their equitable interest into a legal one. But, as the Federal Circuit made clear in *Jim Arnold*, this is precisely what I cannot do. Whereas the federal district courts may adjudicate true cases of infringement, they do not have the power to restore or transfer ownership of a patent as a precondition for determining that infringement claim on its merits. *See* 109 F.3d at 1571–72 (observing that "federal court is not the place to seek . . . judicial intervention" changing ownership where the plaintiff cannot plead from the outset "that he, and not the defendant, owns the patent"). The question of who owns a patent "typically is a question exclusively for [the] state courts," *id.* at 1572—and thus is not a question I may answer absent diversity jurisdiction, *see id.* at 1577. There is no diversity jurisdiction here, as both plaintiffs and the defendant are citizens of Illinois.[10] *See* 28 U.S.C. § 1332(a).[11]

---

[10] *See* [139] ¶ 2 (alleging that Pacholok resides in Illinois); *id.* ¶ 1 (alleging that Induction is an Illinois corporation that does business in Illinois); *id.* ¶ 20 (alleging that Sarge Holdings is a Delaware corporation with its principal place of business in Illinois); *see also* 28 U.S.C. § 1332(c) ("[A] corporation [is] a citizen of every . . . state by which it has been incorporated and . . . where it has its principal place of business . . . .").

[11] Despite plaintiffs' argument to the contrary, *Vink v. Hendrikus Johannes Schijf Rolkan N.V.*, 839 F.2d 676 (Fed. Cir. 1988), is in accord with *Jim Arnold* and does not rescue from dismissal their infringement claim. The *Vink* court did say that whether "a non-federal issue (ownership of the patent) must be resolved before the federal issue (infringement) is immaterial in determining whether there is federal jurisdiction." *Id.* at 679 (citing *Air Products*, 755 F.2d at 1563). This statement seems inconsistent with the approach later taken by the *Jim Arnold* court. A closer examination of the facts in *Vink*, however, reveals no inconsistency. The plaintiff in *Vink* pleaded that he had acquired title to the patent by assignment following a bankruptcy proceeding. *See id.* at 676. The defendant, the original patentee, then claimed that the bankruptcy had not divested him of ownership (and thus that the plaintiff's title was invalid as a matter of law). *See id.* The plaintiff therefore filed a claim requesting a declaration that he was the rightful owner of the patent-in-suit, as well as a claim for infringement. *See id.* at 677. But unlike in *Jim Arnold*—and unlike the situation here—the *Vink* court did not need to transfer ownership to the plaintiff before the

Plaintiffs are burdened with the less-than-complete title they brought to the federal table. This is a heavy burden indeed, as plaintiffs hold at best only an equitable interest in Pacholok's ownership rights; and equitable interests are "insufficient to confer standing to sue for *legal* relief from infringement," *Morrow*, 499 F.3d at 1343 (citing *Arachnid Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579–80 (Fed. Cir. 1991)) (emphasis added); *see also Arachnid*, 939 F.2d at 1579 ("[O]ne seeking to recover money damages for infringement . . . must have held . . . *legal title* to the patent during the time of the infringement.") (second emphasis omitted). As plaintiffs did not hold complete legal title to the patents-in-suit before filing the complaint, they do not have standing to assert a claim for infringement damages against Pacholok.[12]

> b.    Injunctive Relief

Although plaintiffs cannot seek damages from Pacholok, equitable relief may still be available if plaintiffs are correct that Pacholok, as a former co-founder and co-owner of Induction, either agreed to assign or did impliedly assign his ownership rights to the corporation—thus endowing plaintiffs with equitable ownership of his *pro rata* share. *See Arachnid*, 939 F.2d at 1580 (explaining that, where the plaintiff

---

court could reach the merits of the infringement claim. No such "judicial intervention" was required because, in *Vink*, the plaintiff already had proof of legal title: a written assignment.

[12] I note that even if, through diversity jurisdiction, I had the authority to adjudicate plaintiffs' ownership claim—and even if, as plaintiffs urge, I declared them to have been the *de facto* owners of the patents since 2000—plaintiffs still would not have standing to seek legal relief from Pacholok. As the Federal Circuit made clear in *Arachnid*, a judicial decree establishing plaintiffs to have been the patents' true owners does not "retroactively divest [Pacholok] of legal title . . . during [the alleged infringement] timeframe and revest that legal title in [plaintiffs] for standing purposes," 939 F.2d at 1579.

is adjudged an equitable title-holder of a patent, federal district courts have jurisdiction to determine a claim for infringement "as a prerequisite to awarding *equitable* relief").

In their complaint, plaintiffs do claim an equitable interest in the patents, *see* [139] ¶ 18 (alleging that the patents "are equitably owned by Induction"); and plaintiffs also request (in addition to damages) an equitable form of relief, *see id.* at 8 (requesting an injunction preventing Pacholok from making, using, or selling the patented inventions). In their response to Pacholok's motion to dismiss, however, plaintiffs appear to disclaim any reliance on their supposed equitable title. *See* [151] at 20 ("Pacholok says Plaintiffs do not have equitable title in the [patents-in-suit]. *Because Induction relies on legal, not equitable, title*, these arguments are inapplicable.") (emphasis added); *see also id.* at 19 (asserting that certain cases cited by Pacholok in his motion "are inapposite" because they "involve equitable title issues"). I take plaintiffs at their word and assume that they no longer intend to move forward with a claim of equitable ownership.

Even if I made no such assumption, however, plaintiffs' claim for injunctive relief still could not proceed at this time. As discussed previously, plaintiffs hold at best an equitable interest in Pacholok's *pro rata* share of the patent rights. But a mere allegation of equitable *interest* does not open the doors of the federal courthouse, because only "adjudged" equitable title-holders may rightfully pursue equitable relief for infringement. *See Arachnid*, 939 F.32d at 1580. This means that, before a federal court may determine whether a plaintiff is entitled to an injunction,

for example, "the plaintiff's claim of equitable ownership [must be] adjudged valid by a court having jurisdiction over *that* question." *Id.* (citation omitted). Here, however—and as I explain above—I do not have jurisdiction over plaintiffs' ownership claim because, absent complete diversity, ownership is a question of state law, and diversity here is incomplete. As I cannot properly adjudge plaintiffs to be the patents' true and complete title-holders in equity, I cannot reach the merits of plaintiffs' infringement claim—even if limited to a claim for equitable relief. *See id.* To move forward with such an action, plaintiffs must first try their hand in state court. *See Jim Arnold*, 109 F.3d at 1572, 1577.[13]

Count III of plaintiffs' second amended complaint (patent infringement) is therefore dismissed for lack of standing and, consequently, jurisdiction.

### 2. *Patent Inventorship (Count I)*

Plaintiffs also seek a judgment declaring Pacholok and Thomas Gough to be the "true and proper inventors" of the '096 and '590 patents. *See* [139] ¶ 29; *id.* at 8. Although the patents already say as much, *see id.* ¶ 29, plaintiffs maintain that an actual controversy of inventorship exists between the parties—and I therefore have jurisdiction over this claim—because plaintiffs have reason to believe that Pacholok will sue to remove Gough as a named inventor, *see id.* ¶ 28, 30; [151] at 12–14.

Federal patent law provides that, where an error has been made in naming the true inventors on an issued patent, the error may be corrected. *See* 35 U.S.C.

---

[13] Pacholok contends that plaintiffs' supposed equitable interest cannot be adjudged a true equitable ownership. *See* [144] at 10–12. However, because I do not have jurisdiction to adjudicate plaintiffs' claim of equitable ownership, I do not reach these arguments.

§ 256. Actions to correct inventorship arise under the patent laws, such that the federal district courts have (exclusive) jurisdiction over those claims. *See Larson v. Correct Craft Inc.*, 569 F.3d 1319, 1324–25 (Fed. Cir. 2007) (citing 28 U.S.C. § 1338(a); *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed. Cir. 1989)).[14] But whether the federal courts also have jurisdiction to declare that a recorded inventorship is *already* correct entails a more complicated inquiry. A plaintiff seeking such a decree must establish: (1) that the plaintiff holds a recognized interest in the patent that "could be adversely affected by an action" brought under Section 256; and (2) that another party with the right to bring a Section 256 action "has created in the . . . plaintiff a reasonable apprehension that [the party] will do so." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471 (Fed. Cir. 1997). Where both requirements are satisfied, the plaintiff has demonstrated the existence of a controversy appropriate for a federal court to decide. *See id.* (citing *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952)).[15]

---

[14] Like infringement, patent inventorship is also a "unique question of patent law." *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co., Ltd.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010). I therefore look to Federal Circuit precedent here, as well.

[15] The *Fina* test derives from the Federal Circuit's earlier-established standard for determining whether a would-be infringement defendant may seek a declaratory judgment that the patent is invalid. *See id.* at 1470–71. That test, too, includes a "reasonable apprehension of suit" element. *See id.* at 1470. But the "reasonable apprehension" requirement—at least in the infringement context—was later abandoned in the wake of the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). In *MedImmune*, the Court concluded that such a requirement sets the case-or-controversy bar too high. *See id.* at 126–37; *see also Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (explaining that the reasonable-apprehension-of-suit test has been discarded). Post *MedImmune*, declaratory plaintiffs in the infringement context need only establish that, between parties with adverse legal interests, there exists a "substantial controversy . . . of sufficient immediacy and reality" that declaratory judgment is appropriate. *Arkema*, 706 F.3d at 1356 (quoting *MedImmune*, 549 U.S. at 127). Thus,

a. <u>Existence of a Controversy</u>

Relying on *Larson v. Correct Craft*, Pacholok asserts that when plaintiffs filed their inventorship claim, they did not have a recognized interest in the patents that could be adversely affected by a Section 256 action—and therefore did not have constitutional standing to seek a declaratory judgment of inventorship—because plaintiffs did not (and do not) have a financial interest in the inventorship of the patents-in-suit. *See* [144] at 6–7 (citing 569 F.2d at 1325–27). Pacholok's argument is unpersuasive.

First, I disagree that plaintiffs lack a financial interest in the inventorship of the patents-in-suit. As the now-owners of Gough's 50-percent undivided title— which Gough presumptively acquired when he was named as co-inventor of the patents, *see Max-Planck*, 734 F.3d at 1324—plaintiffs have the right to make, use, and sell the patented inventions, and to profit from doing the same. If, on the other hand, Pacholok were to bring a successful Section 256 action correcting

---

although *Fina*—and its test for determining whether there exists a live "controversy" in the *inventorship* context—has never been expressly overruled, there is reason to believe that at least the reasonable-apprehension prong of that test no longer applies. (Though at least some courts continue to apply both prongs. *See Am. Navigation Sys., Inc. v. Michalson*, No. 11-10304-FDS, 2011 WL 5330533, at *2 (D. Mass. 2011).)

Nevertheless, even if a reasonable apprehension of suit is no longer *required*, the Federal Circuit has determined that it is at least sufficient to establish a justiciable controversy where the parties' interests are legally adverse. *See Arkema*, 706 F.3d at 1358 n. 5 ("While a declaratory judgment plaintiff is no longer required to demonstrate a reasonable apprehension of suit, . . . such a showing remains sufficient to establish jurisdiction.") (citations omitted). As I explain further *infra*, I do find that plaintiffs here were at one point laboring under a reasonable apprehension that Pacholok would bring an action to correct inventorship, and also that Pacholok's interests in inventorship were adverse to plaintiffs'. I therefore conclude that, whether or not the "reasonable apprehension" test still governs in the inventorship arena, plaintiffs have necessarily established that there was at one time a justiciable controversy with Pacholok. *But see* Section III.2.b *infra* (discussing the effect of Pacholok's covenant not to sue).

19

inventorship, thereby removing Gough as inventor, plaintiffs' derivative ownership rights—and their corresponding right to practice the patents-in-suit—would evaporate. Plaintiffs would no longer be able to profit from the sales of the patented invention, or to extract royalty payments from would-be infringers. Certainly, plaintiffs' interest in collecting profits and royalties was and is a "financial" one.

Regardless, Pacholok's reliance on *Larson* is misplaced. In *Larson*, the Federal Circuit focused specifically on whether the plaintiff had a separate financial interest in inventorship (and thus had standing to bring a Section 256 claim) because the plaintiff had already assigned away all of their ownership rights. *See* 569 F.3d at 1326–27; *see also Shum v. Intel Corp.*, 629 F.3d 1360, 1366 n. 7 (Fed. Cir. 2010) (explaining that the court's decision in *Larson* "was based on [the] transfer of ownership rights"). Not so here. Where no transfer of title has occurred, the plaintiff-owner necessarily retains an interest in its patents that could be adversely affected by the removal of that owner (or that owner's assignor) as inventor of those patents. *Cf. Shum*, 629 F.3d at 1366 n. 7 (noting that a plaintiff has standing to pursue a Section 256 claim if he has not assigned to another his ownership rights). As owners of the patents-in-suit, plaintiffs here had a concrete interest in keeping inventorship intact when they filed their claim for declaratory judgment on that issue.[16]

---

[16] Plaintiffs' interests in inventorship were therefore legally adverse to Pacholok's. Whereas Pacholok would remain an owner of the patents even if Thomas Gough's name were removed as an inventor, plaintiffs would not. Consequently, Pacholok's later argument that he shared or shares with plaintiffs the *same* interests in inventorship, *see* [153] at 4–5, is unpersuasive. Pacholok also suggests that Induction, at least, does not have standing to bring an inventorship claim because the corporation does not actually own either of the

Not only did plaintiffs have an interest in maintaining the patents' inventorship as-is, but plaintiffs also had a reasonable apprehension that Pacholok would take action directly adverse to that interest. Indeed, plaintiffs had *more* than a reasonable apprehension that Pacholok would do so, because Pacholok had in fact already done it: in his answer to plaintiffs' original complaint, Pacholok included a counterclaim requesting that Gough's name be removed from the patents. *See* [20] ¶¶ 30–37 (Count I of Pacholok's counterclaims). Although Pacholok's initial answer has since been rendered inoperative by the amendment of plaintiffs' original complaint, Pacholok certainly made clear his intent to pursue a Section 256 claim; and but for the covenant discussed below, there is no reason to believe that Pacholok would not renew his counterclaim if, for example, his motion to dismiss were unsuccessful here. I therefore find that when plaintiffs filed their inventorship claim, there existed a true and immediate inventorship controversy between plaintiffs and Pacholok.

b.     Covenant Not to Sue

Pacholok contends that, to the extent there existed an inventorship controversy, the controversy is now moot because Pacholok has filed a covenant not to sue on that issue. *See* [144] at 7 (referencing *id.* at 62–63). The filing of a covenant not to sue can, in some circumstances, extinguish the controversy between

patents-in-suit. *See* [144] at 7. Whether Induction (as licensee) may bring its own inventorship action is immaterial to the inquiry at hand, because Sarge Holdings (the licensor) is a *pro rata* owner and has voluntarily joined in Induction's suit. Thus, to the extent that plaintiffs' inventorship claim is governed by prudential standing rules—which typically require patent licensees to join as co-plaintiff the patentee who granted the license, *see Morrow*, 499 F.3d at 1340—those rules have already been satisfied.

parties such that the court no longer has Article III jurisdiction over that claim. *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1349 (Fed. Cir. 2010); *see also Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1380 (Fed. Cir. 2011) (citing *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059–60 (Fed. Cir. 1995)). Whether a covenant operates to nullify an existing controversy depends on what, precisely, is covered by the agreement. *See Dow Jones*, 606 F.3d at 1347 (citing *Revolution Eyewear, Inc. v. Aspex Eyewear*, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009)). While broad or unconditional covenants are likely to moot a case, narrow covenants, or those with significant exceptions, are less likely to do so. *Compare, e.g.*, *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010) *with Revolution*, 556 F.3d at 1300.[17]

The covenant Pacholok has filed in this case is not unlimited. Although Pacholok has agreed generally not to re-plead or to otherwise file against plaintiffs any counterclaim or action seeking to remove Gough's name from the patents-in-suit, Pacholok makes no such commitment in the event that a third party

[17] Plaintiffs contend that *Dow Jones* (and other cases addressing the mooting effect of covenants not to sue) are inapposite here because, in those cases, the plaintiffs requested a declaration of non-infringement, not a confirmation of inventorship. *See* [151] at 14–15. Unlike infringement, argue plaintiffs, an inventorship challenge cannot be "disclaimed" once it has been raised. *See id.* at 15. While plaintiffs are not incorrect that covenants in patent cases typically arise in the infringement context—and that the case law has therefore addressed the effect of such covenants largely in that same arena—I do not agree, and plaintiffs point to no authority suggesting, that covenants not to sue can never operate to moot an inventorship controversy. Indeed, had Pacholok filed an unrestricted covenant not to sue for correction of inventorship—that is, a promise not to seek the removal of Thomas Gough's name under *any* circumstances—then, at least between plaintiffs and Pacholok, there would be no "controversy" to adjudicate at all. At bottom, what plaintiffs complain of is not that Pacholok filed a covenant not to sue, but that he filed a covenant that is, as plaintiffs term it, "voidable," *see id.* But the voidability of a covenant is a separate issue from whether a covenant not to sue may operate to nullify a case or controversy in the first instance.

challenges the validity of either patent based on incorrect inventorship, *see* [144] at 62 ¶ 4(a). In short, Pacholok has reserved the right to sue for correction of inventorship in certain circumstances.

A retention of the right to sue in certain situations may indeed preserve a case or controversy that otherwise would have been mooted by a covenant not to sue. *See King*, 616 F.3d at 1283 (citing *Revolution*, 556 F.3d at 1298). Nonetheless, the mere existence of such an exception is not enough to negate automatically that case-mooting effect. A promise not to sue, even with an exception, will still erase the controversy if the declaratory plaintiff does not demonstrate a non-speculative likelihood that the exception will actually apply. *See Organic Seed Growers and Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1360 (Fed. Cir. 2013); *cf. Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 728–29 (2013) (concluding that a case was mooted by a covenant not to sue where there was no reasonable expectation that future conduct would fall outside the scope of the covenant).

Plaintiffs urge that the exception to Pacholok's covenant may be triggered if, for example, plaintiffs were to become embroiled in an infringement suit with their competitor, Lace Technologies, and Lace were to challenge the patents' inventorship in defense. *See* [151] at 15. Failure to name inventors on a patent correctly does render that patent invalid, *see Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348–50 (Fed. Cir. 1998) (citing generally 35 U.S.C. § 102(f));[18] and invalidity is a defense to an

---

[18] The Leahy-Smith America Invents Act (AIA), Pub. L. No. 112–29, amended portions of the Patent Act, including Section 102. Because the applications for the patents-in-suit here (filed on June 13 and August 12, 2002, respectively, *see* [139-1] at 3, 11), were filed before

accusation of infringement, *see Commil USA, LLC v. Cisco Sys., Inc.*, 737 F.3d 699, 702 (Fed. Cir. 2013) ("If a patent is found invalid, that is a complete defense to [infringement] liability . . . ."). Thus, if Lace Technologies were indeed sued for infringement of the '096 or '590 patent, the issue of inventorship may very well come into play. The problem with plaintiffs' argument, however, is not that the hypothetical scenario they describe could never come to fruition; the problem is that plaintiffs have failed to provide any facts suggesting that the likelihood of that situation occurring is anything but speculative. And "fears of hypothetical future harm" are not enough to create a justiciable controversy. *Organic Seed Growers*, 718 F.3d at 1360.

In *Organic Seed Growers*, the court confronted a promise by a patentee not to sue individuals who grew or sold with their own seed products only "trace" amounts of the seed product covered by the patents at issue. *See id.* at 1359. The question presented to the court was whether, because the promise contained an exception— that is, the reservation of the patentee's right to sue those who grew or sold *more* than trace amounts of patented product—the promise operated to moot the controversy. The court answered this question in the negative, because the declaratory plaintiffs had failed to allege any concrete plans or steps taken to bring them within the scope of the exception. *See id.* at 1359–60 (citing *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008); *Arkema*, 706 F.3d at 1357). Declaratory plaintiffs, the court explained, "need not be . . . certain that the harm

the AIA took effect on March 18, 2013, the pre-AIA version of Section 102 governs. *See Medism Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1354 n. 1 (Fed. Cir. 2014).

they identify will come about," but they must at least show that "they are at substantial risk of that harm." *Id.* at 1360 (quoting *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1150 n. 5 (2013)). That the plaintiffs in *Organic Seed Growers* might one day grow or sell product with more than a "trace" amount of patented invention in it, thus triggering the exception to the patentee's promise not to sue, was "too speculative" to warrant judicial intervention. *See Id.*[19]

Plaintiffs here find themselves in a position similar to that of the declaratory plaintiffs in *Organic Seed Growers*. In this case, plaintiffs contend that Pacholok's covenant not to sue will not apply *if* "Induction and Lace have an infringement dispute" and *if* "Lace challenges inventorship." [151] at 15. Importantly—and most detrimentally to plaintiffs' inventorship claim—there is no indication that plaintiffs have any concrete plans to sue Lace Technologies (or another third party) for infringement, or that Pacholok, also a co-owner, has taken any such steps.[20] And

---

[19] *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294 (Fed. Cir. 2009), is not to the contrary. In *Revolution*, the patentee had covenanted not to sue for infringement based on the manufacture or sale of any patent-practicing products *before* the conclusion of the civil action, but reserved the right to sue on future sales of the same products. *See id.* at 1295–96, 1298. The reservation of this right, the court concluded, preserved the controversy such that the defendant could pursue its counterclaim for declaratory judgment of invalidity. *See id.* at 1299. But the court was careful to explain how very *not* speculative the potential harm was: not only did the accused infringer have concrete plans to sell the same products moving forward, but the patentee had already represented that it would return to court should those sales occur. *See id.*

[20] Plaintiffs do contend in their response brief, [151], that they have already filed an action against Lace Technologies for copying Induction's products. *See id.* at 10. However, that case has settled. *See id.* Plaintiffs have alleged no steps taken toward suing Lace for a second time, or more specifically, for the infringement of the patents at issue here. Indeed, plaintiffs' ability to sue Lace (or another third party) for such infringement is hampered by the fact that Pacholok still owns *pro rata* title to the patents-in-suit. Because Pacholok remains a co-owner, prudential standing rules provide that, with limited exceptions, plaintiffs cannot sue Lace—or anyone else—for patent infringement without Pacholok's go-

25

while it is true that third parties such as Lace need not wait until sued for infringement—or even for a particularized threat of such suit—before they may assert (through a declaratory-judgment action) the invalidity of a patent, *see MedImmune*, 549 U.S. at 130–37, third parties cannot proceed with such a claim unless and until the patentee has affirmatively asserted his rights in some way, *see, e.g.*, *id.* at 121–22 (describing a letter warning that royalties were owing under a license); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007) (describing statements warning that a license was needed by the declaratory plaintiff because, in the patentee's estimation, the plaintiff was practicing the patentee's invention). Here, however, there is no allegation that plaintiffs have asserted their patent rights against Lace Technologies (or any other entity), or that Pacholok himself has done so. As far as the complaint is concerned, plaintiffs have attempted to assert their rights only against Pacholok.

That plaintiffs might one day assert their patent rights against a third party, or might one day (with Pacholok) file an infringement action against that third party, is too uncertain a hypothetical to present a dispute of such "immediacy" that declaratory judgment is warranted. *See Organic Seed Growers*, 718 F.3d at 1360.[21]

---

ahead. *See Israel Bio-Engineering*, 475 F.3d at 1256 ("Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack standing." (citing *Prima Tek II*, 222 F.3d at 1377)); *see also Ethicon*, 135 F.3d at 1468 (dismissing an infringement suit because the complaint "lack[ed] the participation of a co-owner").

[21] Indeed, the probability that plaintiffs (and Pacholok) will sue a third party for infringement, or that plaintiffs will assert against a third party their rights in the patents-in-suit, appears to be the same now as it was *before* Pacholok filed his counterclaim—the very counterclaim that plaintiffs say generated the immediacy of the current inventorship dispute. *See* [151] at 13–14. If it was the filing of the counterclaim that flipped the

Under the totality of the circumstances presented here, I therefore find that although there is an exception to Pacholok's covenant not to sue, this exception is in effect quite narrow, as plaintiffs have failed to demonstrate a non-speculative likelihood that the exception will ever apply. Pacholok's covenant is sufficient to moot the inventorship controversy that existed previously; therefore, Count I of plaintiffs' complaint is dismissed for lack of jurisdiction.[22]

### B. The Remaining Claims

Pacholok maintains that only plaintiffs' infringement and inventorship claims (Counts I and III, as discussed above) "arise under" the federal patent laws, and that, assuming dismissal of those counts, the court cannot exercise supplemental jurisdiction over the remaining (state-based) claims. *See* [144] at 3. For the reasons explained below, however, one of the remaining claims does arise under federal law. I therefore address whether supplemental jurisdiction applies to the other two counts.

---

"immediacy" switch, I do not see how Pacholok's covenant would not flip it back—since, in effect, the covenant essentially returns the parties to where they were before the counterclaim was ever filed. (And though a party accused of infringement tomorrow may be more likely to assert an invalid-for-misjoinder defense than if sued before the counterclaim appeared in the public record, such a defense—as I explain above—cannot come into play unless and until the patentees have filed suit against that third party, or have asserted their rights against that party in some concrete way. Plaintiffs have given no indication that either event has taken place here.) As Pacholok's covenant not to sue effectively returns us to the pre-"immediate controversy" landscape, declaratory judgment is no longer appropriate.

[22] In his reply brief, [153], Pacholok argues that there are several additional reasons why plaintiffs' inventorship claim should be dismissed. *See id.* at 4–6. As I have already determined that I do not have jurisdiction over this claim, I do not address these additional arguments.

### 1. *Payments Under the Stock Purchase Agreement (Count V)*

Plaintiffs seek a declaratory judgment that they do not owe Pacholok any money pursuant to the Stock Purchase Agreement from 2006. *See* [139] ¶¶ 55–58. Pacholok treats this claim as one arising solely under state law. I disagree.

The federal district courts have original jurisdiction over any civil action "arising under any Act of Congress relating to patents." *Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 599 F.3d 1277, 1282 (Fed. Cir. 2010) (quoting 28 U.S.C. § 1338(a)). Whether an action truly "arises under" the patent laws is governed by the well-pleaded complaint rule, which provides that Section 1338 jurisdiction extends only to cases where: (1) a well-pleaded complaint establishes that federal patent law creates the cause of action; or (2) a well-pleaded complaint shows that the plaintiff's right to relief necessarily depends on the resolution of a patent-law question—*i.e.*, that "patent law is a necessary element of one of the . . . claims." *Id.* (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09 (1988)). In a declaratory-judgment action such as the one presented here, the complaint to be assessed is not the declaratory plaintiff's complaint, but a hypothetical complaint from an action that the defendant *would* have brought but for the plaintiff's declaratory suit. *See id.* (citing *Speedco Inc. v. Estes*, 853 F.2d 909, 912 (Fed. Cir. 1988); *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1578 (Fed. Cir. 1993)).

Here, plaintiffs contend that Induction, through the 2006 Stock Purchase Agreement, committed to pay Pacholok a royalty on sales of goods covered by the patents-in-suit for each year in which said sales exceeded one million dollars. *See*

[139] ¶ 56. Plaintiffs maintain that no such sales have exceeded the threshold dollar amount, and thus Induction does not owe Pacholok any royalties under the Agreement. *See id.* ¶ 57. In his hypothetical claim against plaintiffs, Pacholok would therefore be required to prove that Induction has breached the Stock Purchase Agreement by failing to pay the royalties owed under the contract. A breach-of-contract claim sounds in state law; but if, in proving any element of that claim, a question of patent law must be resolved, the claim arises under federal law and may be entertained in a federal forum, *see Metabolite*, 599 F.3d at 1282. That is the case here.

To prove that Induction has breached the Stock Purchase Agreement, Pacholok would necessarily have to show that at least some of the products sold by Induction within the relevant time period were covered by the '096 or '590 patent. Whether Induction's goods practiced, or were "covered by," the patents-in-suit is in essence a question of infringement—and is, therefore, an issue of federal law. *See Jang v. Bos. Scientific Corp.*, 532 F.3d 1330, 1334 n. 5 (Fed. Cir. 2008) (citing *Christianson*, 486 U.S. at 808–09; *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000)); *see also U.S. Valves*, 212 F.3d at 1372 (noting that a contract case "contains a substantial issue of federal patent law" when, to prevail in that case, the plaintiff must show that the products sold were "covered by" the licensed patents). The Stock Purchase Agreement, in other words, effectively operates as a license from Pacholok to Induction (whereby Induction has obtained the right to practice the '096 and '590 patents in exchange for royalty payments to Pacholok). If

Induction then fails to pay as it should, it is both infringing the patents and breaching the agreement.[23]

Because Pacholok's hypothetical, well-pleaded complaint for breach of contract necessarily contains an issue of federal patent law, there is federal-question jurisdiction over plaintiffs' claim for declaratory judgment regarding the Stock Purchase Agreement. Pacholok's motion to dismiss for lack of jurisdiction is therefore denied as it pertains to Count V of the second amended complaint.

### 2. *Fiduciary Breach (Count II)*

Because Pacholok was a former co-owner and director of Induction, plaintiffs allege that Pacholok owed certain duties to the corporation. *See* [139] ¶¶ 32–34, 44. Plaintiffs maintain that these duties—including a duty of loyalty and a fiduciary duty—continued even after Pacholok parted ways with the company. *See id.* ¶ 42, 46. Pacholok breached these duties, plaintiffs contend, when: (1) he failed to formally assign to Induction his ownership rights in the patents-in-suit; and (2) he purported to license the patents to Induction's competitor, Lace Technologies, without Induction's approval. *See id.* ¶ 47–49.

As plaintiffs' claim of fiduciary breach sounds purely in state law, and as this is not a diversity case, my jurisdiction over this claim (if any) is limited to

---

[23] I note that, in practice, Pacholok's hypothetical infringement claim against Induction would not necessarily survive a motion to dismiss for lack of standing. As discussed further above, Induction is an exclusive licensee of Sarge Holdings, which currently holds 50-percent undivided title to the patents-in-suit. Thus, for the same reasons that plaintiffs do not now have standing to sue Pacholok for infringement, Pacholok, conversely, may not have standing to bring an infringement suit against Induction. Nevertheless, whether Pacholok's hypothetical breach-of-contract suit could survive a standing challenge is a separate issue from whether the hypothetical suit contains an issue of federal patent law.

supplemental jurisdiction. District courts have supplemental jurisdiction over state-claims "that are so related to claims [within the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Two claims form part of the same case or controversy if they "derive from a common nucleus of operative facts." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Here, the only original-jurisdiction claim remaining is Count V, plaintiffs' declaratory-judgment action regarding the 2006 Stock Purchase Agreement. Thus, to exercise supplemental jurisdiction over plaintiffs' claim of fiduciary breach, I must find a nucleus of operative facts common with Count V.

I see no such nucleus here. The facts underlying plaintiffs' claim of fiduciary breach speak to Pacholok's failure to assign his ownership rights to Induction, and his interactions with Lace Technologies. The Stock Purchase claim, by contrast, concerns whether Induction sold products covered by the patents-in-suit, and if so, how much. If there is an overlap in facts between these two claims, it is negligible at best (and not an overlap of operative facts).

Count II of plaintiffs' second amended complaint is therefore dismissed for lack of jurisdiction.

### 3. *Interference with Business Relations (Count IV)*

According to plaintiffs, Pacholok continued to represent to third parties that he was affiliated with Induction even after he had severed ties with the company. *See* [139] ¶ 54. This, plaintiffs say—in combination with Pacholok's having licensed

the patents-in-suit to plaintiffs' competitor—constituted a wrongful interference with Induction's business. *See id.* Like plaintiffs' claim for fiduciary breach, this claim is a matter of state law, and federal jurisdiction (if any) is limited to supplemental jurisdiction. Here again, however, I find no commonality between the facts underlying the state-law claim and those underlying the request for declaratory judgment on the Stock Purchase Agreement. Whether Pacholok misled third parties into believing that he was still a part of Induction—or cut plaintiffs out of receiving royalty payments (and profits) by unilaterally licensing the patents-in-suit to Lace Technologies—is unconnected to whether, between 2007 and 2013, Induction sold products embodying either patented invention.

Count IV of plaintiffs' second amended complaint is therefore dismissed for lack of jurisdiction.

## IV. Conclusion

Pacholok's retention of ownership rights in the patents-in-suit has created a thorn in the side of Induction, and the company's attempt to sever ties through contractual arrangements has in a sense backfired—preventing Induction from accessing a federal forum to resolve the most pressing of the parties' disputes: control over the patents. In the end, that fight belongs in state court. For the reasons discussed above, Pacholok's motion to dismiss is granted in part and denied in part. The motion is denied as it pertains to plaintiffs' request for a declaration that no money is owed Pacholok under the Stock Purchase Agreement (Count V).

The motion is granted as it pertains to all other claims in the second amended complaint, [139], which are dismissed without prejudice for lack of jurisdiction.

ENTER:

_Manish S. Shah_
Manish S. Shah
United States District Judge

Date: 9/30/14